**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**
**PITTSBURGH DIVISION**

| | |
|---|---|
| BRYE THURLOW, Individually and for Others Similarly Situated | Case No. 2:24-cv-01135 |
| v. | Jury Trial Demanded |
| NATIONAL INSPECTION SERVICES, LLC | FLSA Collective Action<br>Rule 23 Class Action |

**ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT**

**SUMMARY**

1. Brye Thurlow (Thurlow) brings this class and collective action to recover unpaid wages and other damages from National Inspection Services, LLC (National Inspection).

2. National Inspection employed Thurlow as one of its Shift Rate Workers (defined below) in Pennsylvania.

3. Thurlow and the other Shift Rate Workers regularly work more than 40 hours a week.

4. But National Inspection does not pay Thurlow and the other Shift Rate Workers for all their hours worked.

5. Instead, National Inspection pays Thurlow and the other Shift Rate Workers for 8 hours, 10 hours, or 12 hours of work (National Inspection's shift rate pay scheme).

6. Under National Inspection's shift rate pay scheme, it pays Thurlow and the other Shift Rate Workers 8, 10, or 12 hours regardless of how many hours they actually work.

7. But Thurlow and the other Shift Rate Workers are regularly forced to work more than 8, 10, or 12 hours a day to complete their job duties.

8. Additionally, National Inspection did not pay Thurlow and the other Shift Rate Workers overtime at the required premium rates for hours worked in excess of 40 in a workweek.

9. Instead, National Inspection paid Thurlow and other Shift Rate Workers per diems that National Inspection excluded when calculating these employees' regular rates of pay for overtime purposes (National Inspection's "per diem pay scheme").

10. National Inspection's per diem pay scheme violates the Fair Labor Standards Act (FLSA) by depriving Thurlow and the other Shift Rate Workers of overtime pay at rates not less than 1.5 times their regular rates of pay—based on all renumeration received—for hours worked after 40 in a workweek.

11. And National Inspection's uniform shift rate pay scheme violates the Fair Labor Standards Act (FLSA) and the Pennsylvania Minimum Wage Act (PMWA) by depriving these employees of overtime wages for all overtime hours worked.

12. National Inspection's shift rate pay scheme and per diem pay scheme violate the Pennsylvania Wage Payment and Collection Law (WPCL) by depriving Thurlow and the other Shift Rate Workers of earned wages, including overtime wages, for all their hours worked.

## JURISDICTION & VENUE

13. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

14. The Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

15. This Court has general personal jurisdiction over National Inspection because it is registered to do business in the Commonwealth. *See Mallory v. Norfolk Southern Railway Co.*, 600 U.S. 122, 134 (2023); *see also* 42 PA. CONS. STAT. § 5301.

16. Venue is proper because a substantial portion of the events or omissions giving rise to this action occurred in this District and Division. 28 U.S.C. § 1391(b)(2).

17. Specifically, Thurlow worked for National Inspection based out of Washington County, Pennsylvania and primarily in and around Washington County, Pennsylvania, which is in this District and Division.

**PARTIES**

18. National Inspectors employed Thurlow as an Assistant Radiographer in Pennsylvania, West Virginia, and Ohio from approximately September 2023 until June 2024.

19. Throughout his employment, National Inspection paid Thurlow under its shift rate pay scheme.

20. Thurlow's written consent is attached as **Exhibit 1**.

21. Thurlow brings this class and collective action on behalf of himself and other hourly employees who National Inspection paid under its shift rate pay scheme and/or per diem pay scheme.

22. National Inspection pays each of these workers on a shift rate basis (based on an 8-hour shift each day).

23. But each of these employees is regularly forced to work beyond their 8, 10, or 12-hour shifts without compensation to complete their job duties.

24. Thus, National Inspection deprives these employees of overtime wages for all overtime hours worked in violation of the FLSA and PMWA.

25. Likewise, National Inspection uniformly deprives these employees of earned wages for all hours worked in violation of the WPCL.

26. The FLSA Collective of similarly situated employees is defined as:

> **All hourly employees who National Inspection paid according to its shift rate pay scheme and/or per diem pay scheme during the last three years (the "FLSA Collective Members").**

27. Thurlow also seeks to represent a class under the PMWA and WPCL pursuant to Fed. R. Civ. P. 23.

28. The Pennsylvania Class of similarly situated employees is defined as:

> **All hourly employees in, or based out of, Pennsylvania[1] who National Inspection paid according to its shift rate pay scheme and/or per diem pay scheme during the last three years (the "Pennsylvania Class Members").**

29. The FLSA Collective Members and the Pennsylvania Class Members are collectively referred to as the "Shift Rate Workers."

30. National Inspection is a Louisiana limited liability company headquartered in Scott, Louisiana and registered to do business in Pennsylvania.

31. National Inspection may be served through its officers, directors, managing agents, or general agents at its registered office: **Bailey Center II, 135 Technology Dr, Suite 204, Canonsburg, Pennsylvania 15317**.

## FLSA COVERAGE

32. At all relevant times, National Inspection was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

33. At all relevant times, National Inspection was an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

---

[1] The PMWA and WPCL apply to Pennsylvania workers, regardless of the state in which the work is performed. *Truman v. DeWolff, Boberg & Assocs., Inc.*, No. 07-01702, 2009 WL 2015126, at *2 (W.D. Pa. July 7, 2009) ("In light of the FLSA's explicit recognition that states may offer greater protections to its employees than the FLSA, we are reluctant to find an unstated foreign-work exemption in the PMWA based solely on the fact that the FLSA contains such an exemption."). Courts apply a five-factor test for purposes of the PMWA and WPCL to determine whether workers are based in Pennsylvania, which include (1) employer's headquarters; (2) employee's physical presence working in Pennsylvania; (3) extent of employee's contact with Pennsylvania Employer, i.e., reporting, direction, supervision, hiring, assignment, and termination; (4) employee's residence; and (5) employee's ability to bring her claim in another forum. *See Matthews v. BioTelemtry, Inc.*, No. CV 18-561, 2018 WL 3648228, at *3 (E.D. Pa. July 31, 2018).

34. At all relevant times, National Inspection was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, and personal protective equipment—that have been moved in or were produced for commerce.

35. At all relevant times, National Inspection has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

36. At all relevant times, Thurlow and the other Shift Rate Workers were National Inspection's "employees" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

37. At all relevant times, Thurlow and the other Shift Rate Workers were engaged in commerce or in the production of goods for commerce.

38. National Inspection paid Thurlow and the other Shift Rate Workers under its shift rate pay scheme and/or per diem pay scheme.

39. But National Inspection required Thurlow and the other Shift Rate Workers to work beyond their 8, 10, o 12-hour shifts (without pay) to complete their job duties.

40. As a result, National Inspection failed to pay Thurlow and its other Shift Rate Workers for this compensable work, including overtime, they performed beyond their 8-hour shifts.

41. National Inspection's shift rate pay scheme and per diem pay scheme deprive Thurlow and the other Shift Rate Workers of overtime wages at the required rate for all hours worked after 40 in a workweek, in willful violation of the FLSA. 29 U.S.C. § 207(a) & (e).

**FACTS**

42. National Inspection "is a full-service Non Destructive Testing (NDT) company with the proven expertise and resources to handle projects of almost any size. [National Inspection] [s]pecializ[es] in radiography examination of conventional land-laid pipelines."[2]

43. To meet its business objectives, National Inspection employs workers, including Thurlow and the other Shift Rate Workers, to examine gas pipelines to ensure that each section of pipeline is up to code.

44. National Inspection pays Thurlow and the other Shift Rate Workers under its shift rate pay scheme and per diem pay scheme.

45. While exact job titles and job duties may differ, these employees are subjected to the same or similar pay practice—National Inspection's shift rate pay scheme and per diem pay scheme—for similar work.

46. For example, National Inspection employed Thurlow as an Assistant Radiographer in Pennsylvania, Ohio, and West Virginia from approximately September 2023 until June 2024.

47. As an Assistant Radiographer, Thurlow's primary job duties included working alongside a licensed radiographer to assist in performing and interpreting x-rays on the welds connecting sections of gas pipeline to determine whether the welds were structurally sound or whether a section needed to be recut and rewelded.

48. Throughout his employment, the licensed radiographer Thurlow worked alongside "reported" his hours worked via National Inspection's company-wide timekeeping system.

49. But these "reported" hours worked did not accurately reflect the number of hours Thurlow actually worked.

---

[2] https://www.nisndt.com/ (last visited July 29, 2024).

50. Rather, the number of "reported" hours reflected the number of hours National Inspection had contracted with a particular client for the Shift Rate Workers to work per workday pursuant to the particular client's contract with National Inspection.

51. Throughout his employment, Thurlow regularly worked more than 40 hours a workweek.

52. Indeed, throughout his employment, Thurlow worked 10 to 12 hours a day for 5 to 6 days a week (50 to 72 hours a workweek).

53. And National Inspection agreed to pay Thurlow $22 an hour for his first 40 hours worked each workweek plus overtime for his hours worked over 40.

54. But throughout his employment, National Inspection did not pay Thurlow for all his hours worked.

55. Instead, throughout his employment, National Inspection paid Thurlow under its shift rate pay scheme.

56. Specifically, National Inspection paid Thurlow for 8, 10, or 12 hours of work per workday.

57. But, as noted above, throughout his employment, Thurlow regularly worked more than 8, 10, and 12 hours a day to complete his job duties and responsibilities in accordance with National Inspection's (and its clients') policies, procedures, standards, and expectations.

58. When Thurlow worked beyond his 8, 10, or 12-hour shift, National Inspection did not pay Thurlow for any hours worked beyond the predetermined shift length.

59. That is, under National Inspection's shift rate pay scheme, it only paid Thurlow a maximum of 8, 10, or 12 hours a day, even when he worked more.

60. And National Inspection likewise paid the other Shift Rate Workers under this shift rate pay scheme.

61. And like Thurlow, the other Shift Rate Workers typically worked approximately 10 to 12 hours a day for 5 to 6 days a week (50 to 72 hours a workweek).

62. Despite knowing Thurlow and the other Shift Rate Workers regularly performed compensable work beyond their predetermined shifts for National Inspection's predominant benefit, National Inspection did not pay them for this work.

63. And National Inspection paid Thurlow and the other Shift Rate Workers according to its per diem pay scheme.

64. National Inspection pays Thurlow and the other Shift Rate Workers per diems.

65. But, for example, Thurlow never stayed away from overnight for work.

66. National Inspection knows these per diems must be, but are not, included in Thurlow and the other Shift Rate Workers' "regular rates" of pay for overtime purposes.

67. Thus, under National Inspection's shift rate pay scheme and per diem pay scheme, it deprives Thurlow and the other Shift Rate Workers of overtime pay, at the required rate – based on all remuneration received – for the work they perform beyond their predetermined shifts during workweeks in which they work more than 40 hours, in willful violation of the FLSA and PMWA.

68. Likewise, under National Inspection's shift rate pay scheme and per diem pay scheme, it withholds earned wages (including earned overtime wages) from Thurlow and the other Shift Rate Workers for the work they perform beyond their shifts and/or in excess of 40 hours a workweek, in willful violation of the WPCL.

### CLASS & COLLECTIVE ACTION ALLEGATIONS

69. Like Thurlow, the Shift Rate Workers are victimized by National Inspection's uniform, shift rate pay scheme and per diem pay scheme.

70. Other Shift Rate Workers worked with Thurlow and indicated they were paid in the same manner, performed similar work, and were subject to National Inspection's shift rate pay scheme.

71. Based on his experience with National Inspection, Thurlow is aware National Inspection's shift rate pay scheme and per diem pay scheme were imposed on the other Shift Rate Workers.

72. The Shift Rate Workers are similarly situated in the most relevant respects.

73. Even if their precise job duties or locations might vary, these differences do not matter for the purpose of determining their entitlement to earned wages for all hours worked and overtime wages for all overtime hours worked.

74. Therefore, the specific job titles or precise job locations of the Shift Rate Workers do not prevent class or collective treatment.

75. Rather, National Inspection's shift rate pay scheme and per diem pay scheme render Thurlow and the other Shift Rate Workers similarly situated for the purpose of determining their right to earned wages for all hours worked and overtime wages for all overtime hours worked.

76. National Inspection's records reflect the number of "on the clock" hours the Shift Rate Workers recorded worked each week.

77. National Inspection's records also show the Shift Rate Workers were only paid for a maximum of 8, 10, or 12 hours worked each workday.

78. The back wages owed to Thurlow and the other Shift Rate Workers can therefore be calculated using the same formula applied to the same records.

79. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to National Inspection's records, and there is no detraction from the common nucleus of liability facts.

80. Therefore, the issue of damages does not preclude class or collective treatment.

81. Thurlow's experiences are therefore typical of the experiences of the other Shift Rate Workers.

82. Thurlow has no interest contrary to, or in conflict with, the other Shift Rate Workers that would prevent class or collective treatment.

83. Like each Shift Rate Worker, Thurlow has an interest in obtaining the unpaid wages owed under federal and Pennsylvania law.

84. Thurlow and his counsel will fairly and adequately protect the interests of the Shift Rate Workers.

85. Thurlow retained counsel with significant experience in handling complex class and collective action litigation.

86. A class and collective action is superior to other available means for fair and efficient adjudication of this lawsuit.

87. Absent this class and collective action, many Shift Rate Workers will not obtain redress for their injuries, and National Inspection will reap the unjust benefits of violating the FLSA, PMWA, and WPCL.

88. Further, even if some of the Shift Rate Workers could afford individual litigation, it would be unduly burdensome to the judicial system.

89. Indeed, the multiplicity of actions would create a hardship to the Shift Rate Workers, the Court, and National Inspection.

90. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Shift Rate Workers' claims.

91. The questions of law and fact that are common to each Shift Rate Worker predominate over any questions affecting solely the individual members.

92. Among the common questions of law and fact are:

a.  Whether National Inspection engaged in a policy or practice of only paying the Shift Rate Workers for a maximum of 8, 10, or 12 hours worked each day, regardless of whether they worked more;

b.  Whether National Inspection knew, or had reason to know, they requested, suffered, permitted, or allowed the Shift Rate Workers to work beyond their predetermined shifts without compensation;

c.  Whether National Inspection paid the Shift Rate Workers per diems that it excluded from their regular rates of pay for overtime purposes;

d.  Whether National Inspection failed to pay the Shift Rate Workers overtime at rates not less than 1.5 times their regular rates of pay – based on all remuneration received – for hours worked after 40 in a week in violation of the FLSA and PMWA.

e.  Whether National Inspection failed to pay the Shift Rate Workers overtime wages for all overtime hours worked, including those worked beyond their predetermined shifts, in violation of the FLSA and PMWA;

f.  Whether National Inspection withheld earned wages (including earned overtime wages) from the Shift Rate Workers for all hours worked, including those worked beyond their predetermined shifts, in violation of the WPCL;

g.  Whether National Inspection's decision not to pay the Shift Rate Workers overtime wages for all overtime hours worked was made in good faith;

      h.      Whether National Inspection's decision to withhold earned wages (including earned overtime wages) from the Shift Rate Workers for all hours worked was made in good faith;

      i.      Whether National Inspection's failure to pay its Shift Rate Workers earned wages was the result of a *bona fide* dispute; and

      j.      Whether National Inspection's violations were willful.

93. Thurlow knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

94. As part of its regular business practices, National Inspection intentionally, willfully, and repeatedly violated the FLSA, PMWA, and WPCL with respect to Thurlow and the other Shift Rate Workers.

95. National Inspection's shift rate pay scheme and per diem pay scheme deprived Thurlow and the other Shift Rate Workers of the overtime wages at the required rate that they are owed under federal and Pennsylvania law.

96. There are many similarly situated Shift Rate Workers who have been denied overtime pay at the required rate, in violation of the FLSA, who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

97. The Shift Rate Workers are known to National Inspection, are readily identifiable, and can be located through National Inspection's business and personnel records.

**NATIONAL INSPECTION'S VIOLATIONS WERE WILLFUL AND DONE IN RECKLESS DISREGARD OF THE FLSA AND PENNSYLVANIA LAW**

98. National Inspection knew it employed Thurlow and the other Shift Rate Workers.

99. National Inspection knew it was subject to the FLSA's and PMWA's respective overtime provisions.

100. National Inspection knew the FLSA and PMWA required it to pay non-exempt employees, including Thurlow and the other Shift Rate Workers, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 a workweek.

101. National Inspection knew it was subject to the WPCL.

102. National Inspection knew the WPCL required it to pay employees, including Thurlow and the other Shift Rate Workers, all wages (including overtime wages) earned on their regular pay days and after the termination of their employment.

103. National Inspection knew Thurlow and each Shift Rate Worker worked more than 40 hours in at least one workweek during the last 3 years because these employees were required to report their "on the clock" hours worked via National Inspection's timekeeping system.

104. National Inspection knew Thurlow and the other Shift Rate Workers were non-exempt employees entitled to overtime.

105. National Inspection knew they paid Thurlow and the other Shift Rate Workers on a shift rate basis.

106. National Inspection knew Thurlow's and the other Shift Rate Workers' shift rates were based on an 8, 10, or 12-hour day.

107. National Inspection knew the FLSA, PMWA, and WPCL required them to pay employees, including Thurlow and the Shift Rate Workers, for all hours they performed compensable work.

108. National Inspection knew that, as Thurlow's and the other Shift Rate Workers employer, they had a shared duty to ensure they were not performing work that National Inspection did not want performed.

109. National Inspection knew Thurlow and the other Shift Rate Workers regularly worked beyond their 8, 10, or 12-hour shifts to complete their job duties and responsibilities for National Inspection's predominant benefit because National Inspection required them to do so.

110. Thus, National Inspection knew Thurlow and the other Shift Rate Workers performed compensable work beyond their predetermined shifts.

111. Thus, National Inspection requested, suffered, permitted, or allowed Thurlow and the other Shift Rate Workers to work beyond their predetermined shifts.

112. Nonetheless, National Inspection only paid Thurlow and the other Shift Rate Workers for a maximum of 8, 10, or 12 hours a day, regardless of whether they worked more.

113. Thus, National Inspection knew, should have known, or recklessly disregarded whether it failed to pay Thurlow and the other Shift Rate Workers for all the hours they performed compensable work, including those hours worked beyond their 8, 10, or 12-hour shifts.

114. In other words, National Inspection knew, should have known, or recklessly disregarded whether it failed to pay Thurlow and the other Shift Rate Workers overtime wages at the required rate – based on all remuneration received – for all overtime hours worked, including hours worked beyond their 8-hour shifts, in violation of the FLSA and PMWA.

115. Likewise, National Inspection knew, should have known, or recklessly disregarded whether it withheld earned wages (including earned overtime wages at the required rate) from Thurlow and the other Shift Rate Workers for their hours worked beyond their predetermined shifts in violation of the WPCL.

116. National Inspection's failure to pay Thurlow and the other Shift Rate Workers overtime at the required rate – based on all remuneration received – for all overtime hours worked was neither reasonable, nor was the shared decision not to pay these employees overtime for all overtime hours worked made in good faith.

117. Likewise, National Inspection's failure to pay Thurlow and the other Shift Rate Workers all their earned wages for all hours worked was neither reasonable, nor was the decision not to pay these employees all their earned wages for all hours worked made in good faith.

118. National Inspection's failure to pay Thurlow and the other Shift Rate Workers all their earned wages and overtime wages was not the result of a *bona fide* dispute.

119. National Inspection knew, should have known, or recklessly disregarded that its conduct described in this Complaint violated the FLSA, PMWA, and WPCL.

120. National Inspection knowingly, willfully, and/or in reckless disregard carried out this shift rate pay scheme and per diem pay scheme that deprived Thurlow and the other Shift Rate Workers of earned wages for all hours worked and overtime wages at the required rate – based on all remuneration received – for all hours worked after 40 in a workweek in violation of the FLSA, PMWA, and WPCL.

## COUNT I
### FAILURE TO PAY OVERTIME UNDER THE FLSA
### (FLSA COLLECTIVE)

121. Thurlow brings his FLSA claim as a collective action on behalf of himself and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

122. National Inspection violated, and are violating, the FLSA by employing non-exempt employees (Thurlow and the other FLSA Collective Members) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for the hours they worked after 40 in a workweek.

123. National Inspection's conduct harmed Thurlow and the other FLSA Collective Members by depriving them of the overtime wages they are owed.

124. Accordingly, National Inspection owes Thurlow and the other FLSA Collective Members the difference between the wages actually paid and the proper overtime wages earned.

125. Because National Inspection knew, or showed reckless disregard for whether its shift rate pay scheme and per diem pay scheme violated the FLSA, it owes Thurlow and the other FLSA Collective Members these wages for at least the past 3 years.

126. National Inspection is also liable to Thurlow and the other FLSA Collective Members for an amount equal to all their unpaid overtime wages as liquidated damages.

127. Finally, Thurlow and the other FLSA Collective Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## COUNT II
### FAILURE TO PAY OVERTIME WAGES UNDER THE PMWA
### (PENNSYLVANIA CLASS)

128. Thurlow brings his PMWA claims as a class action on behalf of himself and the other Pennsylvania Class Members pursuant to FED. R. CIV. P. 23.

129. National Inspection's conduct violates the PMWA (43 Pa. Stat. §§ 333.101, *et seq.*).

130. At all relevant times, National Inspection was subject to the PMWA because it was (and is) an "employer" within the meaning of the PMWA. 43 Pa. Stat. § 333.103(g).

131. At all relevant times, National Inspection employed Thurlow and each of the other Pennsylvania Class Members as covered "employees" within the meaning of the PMWA. 43 Pa. Stat. § 333.103(h).

132. National Inspection's shift rate pay scheme and per diem pay scheme imposed on Thurlow and the other Pennsylvania Class Members failed to comply with 43 Pa. Stat. § 333.104(c) and/or 34 Pa. Code § 231.43(b).

133. Section 333.104(c) of the PMWA requires employers, like National Inspection, to pay non-exempt employees, including Thurlow and the other Pennsylvania Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek. 43 Pa. Stat. § 333.104(c).

134. National Inspection violated, and is violating, the PMWA by employing non-exempt employees (Thurlow and the other Pennsylvania Class Members) for workweeks longer than 40 hours without paying these employees premium overtime wages at rates not less than 1.5 times their regular rates of pay for all their hours worked after 40 in a workweek. *See* 43 Pa. Stat. § 333.104(c).

135. National Inspection's unlawful conduct harmed Thurlow and the other Pennsylvania Class Members by depriving them of the overtime wages they are owed.

136. Accordingly, National Inspection owes Thurlow and the other Pennsylvania Class Members the difference between the overtime wages actually paid and the proper overtime wages actually earned, plus prejudgment interest and all available penalty wages. *See* 43 Pa. Stat. § 333.113.

137. Finally, Thurlow and the other Pennsylvania Class Members are entitled to recover all reasonable attorney's fees and costs incurred in this action. *See* 43 Pa. Stat. § 333.113.

### COUNT III
### FAILURE TO PAY ALL WAGES EARNED UNDER THE WPCL
### (PENNSYLVANIA CLASS)

138. Thurlow brings his WPCL claims as a class action on behalf of himself and the other Pennsylvania Class Members pursuant to FED. R. CIV. P. 23.

139. National Inspection's conduct violates the WPCL (43 Pa. Stat. §§ 260.1, *et seq.*).

140. At all relevant times, National Inspection was subject to the WPCL because it was (and is) an "employer" within the meaning of the WPCL. 43 Pa. Stat. § 260.2a.

141. At all relevant times, National Inspection employed Thurlow and each of the other Pennsylvania Class Members as covered "employees" within the meaning of the WPCL.

142. The WPCL requires employers, like National Inspection, to pay employees, including Thurlow and the other Pennsylvania Class Members, all wages (including overtime wages) earned, due, and owing to them on their regular payday and following the termination of their employment. 43 Pa. Stat. §§ 260.3 and 260.5.

143. National Inspection violated, and is violating, the WPCL by depriving Thurlow and the other Pennsylvania Class Members of the wages earned, due, and owing to them. *See* 43 Pa. Stat. §§ 260.3 and 260.5.

144. Thurlow's and the other Pennsylvania Class Members' earned wages have remained unpaid for more than 30 days from the date they were earned, due, and payable.

145. National Inspection's conduct harmed Thurlow and the other Pennsylvania Class Members by depriving them of the earned wages they are owed.

146. National Inspection's failure to pay Thurlow and the other Pennsylvania Class Members all their earned wages was not the result of a *bona fide* dispute.

147. Accordingly, National Inspection owes Thurlow and the other Pennsylvania Class Members the difference between the wages actually paid and the wages actually earned, plus prejudgment interest and all available penalty wages. *See* 43 Pa. Stat. § 260.9a.

148. National Inspection also owes Thurlow and the other Pennsylvania Class Members liquidated damages in an amount equal to 25% of their unpaid wages. *See* 43 Pa. Stat. § 260.10.

149. Finally, Thurlow and the other Pennsylvania Class Members are entitled to recover their attorneys' fees and costs. *See* 43 Pa. Stat. § 260.9a(f).

## JURY DEMAND

150. Thurlow demands a trial by jury on all Counts.

## RELIEF SOUGHT

WHEREFORE, Thurlow, individually and on behalf of the other Shift Rate Workers, seeks the following relief:

    a. An Order designating this lawsuit as a collective action and authorizing notice to the FLSA Collective Members allowing them to join this action by filing a written notice of consent;

b. An Order certifying a class action pursuant to FED. R. CIV. P. 23;

c. An Order appointing Thurlow and his counsel to represent the interests of the Shift Rate Workers;

d. An Order finding National Inspection liable to Thurlow and the other FLSA Collective Members for unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

e. An Order finding National Inspection liable to Thurlow and the other Pennsylvania Class Members for unpaid overtime wages owed under the PMWA, plus all available penalties;

f. An Order finding National Inspection liable to Thurlow and the other Pennsylvania Class Members for unpaid earned wages owed under the WPCL, plus liquidated damages;

g. An Order awarding Thurlow and the other Pennsylvania Class Members an additional 25% penalty as liquidated damages under the WPCL;

h. Judgment awarding Thurlow and the other Shift Rate Workers all unpaid wages, liquidated damages, statutory damages, and any and other penalties available under the FLSA, PMWA, and WPCL;

i. An Order awarding attorneys' fees, costs, and expenses;

j. An Order awarding pre- and post-judgement interest at the highest applicable rates; and

k. Such other and further relief as may be necessary and appropriate.

Date:   August 7, 2024	Respectfully submitted,

**JOSEPHSON DUNLAP, LLP**

By: */s/ Michael A. Josephson*
    Michael A. Josephson PA ID No. 308410
    Andrew W. Dunlap
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    Phone: (713) 352-1100
    Fax:       (713) 352-3300
    mjosephson@mybackwages.com
    adunlap@mybackwages.com

    Richard J. (Rex) Burch
    **BRUCKNER BURCH PLLC**
    11 Greenway Plaza, Suite 3025
    Houston, Texas 77046
    Phone: (713) 877-8788
    Fax:       (713) 877-8065
    rburch@brucknerburch.com

    Joshua P. Geist, PA ID No. 85745
    William F. Goodrich, PA ID No. 30235
    **GOODRICH & GEIST, PC**
    3634 California Ave.
    Pittsburgh, Pennsylvania 15212
    Phone: (412) 766-1455
    Fax: (412) 766-0300
    josh@goodrichandgeist.com
    bill@goodrichandgeist.com

**ATTORNEYS FOR THURLOW &
THE SHIFT RATE WORKERS**