## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRYE THURLOW, Individually and For
Others Similarly Situated

v.

NATIONAL INSPECTION SERVICES,
LLC

Case No. 2:24-cv-001135-CCW

## MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT AND TO DISMISS WITH PREJUDICE

Michael A. Josephson
Andrew W. Dunlap
William M. Hogg
Olivia R. Beale
Josephson Dunlap llp
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com
whogg@mybackwages.com

Richard J. (Rex) Burch
Bruckner Burch pllc
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Tel: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

Joshua P. Geist
William F. Goodrich
Goodrich & Geist p.c.
3634 California Ave.
Pittsburgh, Pennsylvania 15212
Tel: (412) 766-1455
Fax: (412) 766-0300
josh@goodrichandgeist.com
bill@goodrichandgeist.com

*Attorneys for Plaintiffs*

# Table of Contents

1.  Introduction. ...........................................................................................................1

2.  Factual and Procedural Background. .....................................................................1

3.  Summary of the Settlement Terms...........................................................................3

      A.  Gross Settlement Amount.................................................................................3

      B.  Settlement Administration. ..............................................................................3

      C.  Released parties and claims. ............................................................................4

      D.  Settlement fund distribution. ...........................................................................4

      E.  Attorneys' fees and litigation costs. ...............................................................5

4.  Legal Standard. ....................................................................................................... 6

5.  Argument & Authorities. .........................................................................................7

      A.  The Settlement is reasonable, fair, and represents a bona fide dispute over alleged unpaid wages. ...........................................................................................7

      i.  There is a bona fide dispute over FLSA claims. ............................................7

      ii.  The Parties' agreement is fair and reasonable................................................ 9

      B.  The Settlement furthers the FLSA's implementation.................................14

      C.  Plaintiffs' Counsel's fees and costs are reasonable. ..................................15

6.  Dismissal of the Lawsuit With Prejudice. .............................................................17

7.  Conclusion. ...........................................................................................................17

## Table of Authorities

**Page(s)**

**Cases**

*Bettger v. Crossmark, Inc.,*
No. 1:13-CV-2030, 2015 WL 279754 (M.D. Pa. Jan. 22, 2015) ................................................. 8

*Bredbenner v. Liberty Travel, Inc.,*
Nos. 09-905, 09-1248 and 09-4587, 2011 WL 1344745 (D.N.J. Apr. 8, 2011) .................. passim

*Brumley v. Camin Cargo Control, Inc.,*
No. 08-1798 (JLL), 2012 WL 1019337 (D.N.J. Mar. 26, 2012) ................................................. 6, 7

*Cruz v. JMC Holdings, Ltd.,*
No. 16-9321 (KSH) (CLW), 2019 WL 4745284 (D.N.J. Sept. 30, 2019) ................................. 13

*DiFlavis v. Choice Hotels Int'l, Inc.,*
No. 18-3914, 2020 WL 6728806 (E.D. Pa. Nov. 16, 2020) ........................................... 7, 9, 14, 16

*Duke v. Harvest Hosps., Inc.,*
No. 2:20-CV-00865-CCW, 2021 WL 4245089 (W.D. Pa. Sept. 17, 2021) .............................. 17

*Ehrheart v. Verizon Wireless,*
609 F.3d 590 (3d Cir. 2010) ..................................................................................................... 10

*Fritz v. Terminite, Inc.,*
No. 19-15749, 2020 WL 5015508 (D.N.J. Aug. 25, 2020) ........................................................ 7

*Gasper v. Schulson Collective, LLC,*
No. 19-2676, 2020 WL 5878263 (E.D. Pa. Oct. 2, 2020) ......................................................... 16

*Girsh v. Jepson,*
521 F.2d 153 (3d Cir. 1975) ....................................................................................................... 9

*Howard v. Phila. Hous. Auth.,*
197 F. Supp. 3d 773 (E.D. Pa. 2016) ......................................................................................... 7

*In re Cendant Corp. PRIDES Litig.,*
243 F.3d 722 (3d Cir. 2001) ..................................................................................................... 15

*In re Chickie's & Pete's Wage & Hour Litig.,*
No. 12-6820, 2014 WL 911718 (E.D. Pa. Mar. 7, 2014) ...................................................... 9, 14

*In re Gen. Motors Pick–Up Truck Fuel Tank Prods. Liab. Litig.,*
55 F.3d 768 (3d Cir. 1995) .............................................................................................. 6, 11, 15

*In re NCAA Athletic Grant-In-Aid Cap Antitrust Litig.*,
　No. 4:14-md-2541-CW, 2017 WL 6040065 (N.D. Cal. Dec. 6, 2017) ......................................17

*In re Prudential Ins. Co. of Am. Sales Practice Litig.*,
　962 F. Supp. 450 (D.N.J. 1997) ............................................................................. 10, 12

*In re SmithKline Beckam Corp. Sec. Litig.*,
　751 F. Supp. 525 (E.D. Pa. 1990) ......................................................................... 15

*Johnson v. Free State Mgmt. Grp., LLC*,
　No. 20-197-KSM, 2021 WL 2711528 (E.D. Pa. July 1, 2021) ................................. 13

*Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*,
　No. 16-cv-03698-NC, 2018 WL 2183253 (N.D. Cal. May 11, 2018)..........................17

*Jones v. Dominion Res. Servs.*,
　601 F. Supp. 2d 756 (S.D. W. Va. 2009)...................................................................17

*Kraus v. PA Fit II, LLC*,
　155 F. Supp. 3d 516 (E.D. Pa. 2016) .................................................................... 8, 9

*Lynn's Food Stores, Inc. v. United States*,
　679 F.2d 1350 (11th Cir. 1982) ......................................................................6, 7, 8

*Lyons v. Gerhard's Inc.*,
　No. 14-06693, 2015 WL 4378514 (E.D. Pa. July 15, 2015) ....................................16

*Mabry v. Hildebrandt*,
　No. 14-5525, 2015 WL 5025810 (E.D. Pa. Aug. 24, 2015) ....................................16

*McCoy v. Health Net, Inc.*,
　569 F. Supp. 2d 448 (D.N.J. 2008)........................................................................11

*Officers for Justice v. Civil Service Comm'n*,
　688 F.2d 615 (9th Cir. 1982) ................................................................................13

*Payton-Fernandez v. Burlington Stores, Inc.*,
　No. 22-608 (AMD), 2024 WL 5202421 (D.N.J. Dec. 23, 2024)..................................7

*Ripley v. Sunoco, Inc.*,
　287 F.R.D. 300 (E.D. Pa. 2012) .............................................................................12

*Rouse v. Comcast Corp.*,
　No. 14-1115, 2015 WL 1725721 (E.D. Pa. Apr. 15, 2015)......................................13

*Sawyer v. Health Care Sols. at Home, Inc.*,
　No. 5:16-cv-5674, 2019 WL 1558668 (E.D. Pa. Apr. 10, 2019) ................................ 8

*Schwartz v. Penn. St. Univ.*,
No. 4:15-CV-02176, 2017 WL 1386251 (M.D. Pa. Apr. 18, 2017) ............................................16

*Sheinberg v. Sorenson*,
No. 00-6041, 2016 WL 3381242 (D.N.J. June 14, 2016) ............................................................ 11

*Singleton v. First Student Mgmt. LLC*,
No. 13-1744, 2014 WL 3865853 (D.N.J. Aug. 6, 2014) .............................................................7

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ....................................................................................................17

*Zamias v. Fifth Third Bank*,
No. 3:17-CV-153, 2018 WL 3079464 (W.D. Pa. June 21, 2018) .................................................17

**Statutes**

29 U.S.C. § 216 ......................................................................................................................1, 6, 9

**Rules**

Fed. R. Civ. P. 23 ....................................................................................................................1, 9

Fed. R. Civ. P. 41 ....................................................................................................................17

1.    **Introduction.**

Plaintiff Brye Thurlow ("Thurlow" or "Plaintiff") and Defendant National Inspection Services LLC ("NIS" or "Defendant") (collectively, the "Parties") have agreed, subject to Court approval, to resolve this wage and hour lawsuit. The settlement, which followed a thorough investigation, satisfies the criteria for approval of a Fair Labor Standards Act ("FLSA") settlement because it resolves a bona-fide dispute, was reached after in-depth investigation and review of documentary evidence and payroll data, was the result of arm's-length settlement negotiations between experienced counsel, and provides good value to the Plaintiff and the Putative Opt-in Plaintiffs. *See* Exhibit 1, Settlement Agreement. This settlement is not a Rule 23 class action settlement.

Plaintiff now respectfully requests, without opposition, that the Court issue an order approving the Settlement and dismissing the lawsuit with prejudice.

2.    **Factual and Procedural Background.**

Thurlow brought this action in the Western District of Pennsylvania on August 7, 2024, to recover unpaid wages and other damages for himself and all others similarly situated under the FLSA. Doc. 1. *See* 29 U.S.C. § 216(b). Thurlow alleged that he and the Plaintiffs were paid a set shift rate regardless of how many hours they actually worked. Doc. 1 at ¶¶ 5-11. If Plaintiffs went beyond their scheduled shift hours, NIS did not pay them for any hours worked beyond the scheduled shift hours, resulting in Thurlow and the Plaintiffs not receiving overtime they were owed. *Id.* Moreover, Thurlow alleged NIS paid Thurlow and the Plaintiffs "per diems" in addition to their shift rate pay but did not incorporate those per diems into the workers' regular hourly rates of pay for the purposes of calculating overtime. *Id.* Thurlow sought to bring his claims on behalf of

himself and all hourly employees who National Inspection paid under the shift rate pay scheme and/or per diem pay scheme during the previous three years. *Id.* at ¶ 26.

Thurlow's Complaint sought recovery of overtime wages, attorneys' fees and costs, interest, and liquidated damages. *Id.* at ¶¶ 124–127. NIS disputed all material allegations, maintaining throughout the litigation that Thurlow and the Class Members were properly compensated for all hours worked, and that this lawsuit could not be properly certified as a class and/or collective action. *See generally* Doc. 16, Doc. 19 at ¶ 2.

The Parties engaged in informal discovery and Thurlow moved for conditional certification of the FLSA collective on December 6, 2024. Doc. 33. The Court granted conditional certification on February 6, 2025, of the following collective:

> All current and former hourly, non-exempt employees who NIS paid according to its shift rate pay scheme and/or per diem pay scheme at any time in the past three years from February 6, 2022 through the present (the "Putative Collective Members").

*Id.*

The Parties commenced mediation with mediator Christopher Michalski on March 18, 2025. Doc. 40. After working diligently for the entirety of the day, the parties agreed to schedule a second mediation session to continue their discussions. *Id.* The Parties successfully resolved the case during the April 11th session. Doc. 45. The Parties filed a joint status report regarding the settlement on May 14, 2025, noting that the long-form agreement was in the process of being finalized. As part of the settlement agreement, the Parties agreed to settle Thurlow's claims on behalf of himself, the 39 Opt-In Plaintiffs, and 310 Putative Settlement Plaintiffs, subject to the Court's approval. Ex. 1 (Settlement Agreement).

3.    **Summary of the Settlement Terms.**

A.    **Gross Settlement Amount.**

The Settlement Agreement establishes a Gross Settlement Amount of $530,000.00, which consists of (1) the negotiated settlement payments for distribution to Thurlow and the Opt-In Plaintiffs; (2) a service award and separate consideration for Thurlow for bringing the case and in exchange for a general release, and (3) a separately negotiated award of attorneys' fees and costs. Ex. 1 at ¶ 3.

B.    **Settlement Administration.**

Thurlow will receive a Service Award of $5,000.00, as well as a separate consideration of up to $7,000.00 in exchange for a wider and global release of claims. A net settlement amount of $299,510.27 will go to Thurlow, the Opt-In Plaintiffs, and the Putative Settlement Plaintiffs, divided *pro rata* based on their time worked at NIS. *See* Settlement Agreement Exhibits 1-A (Settlement Award List) & 1-B (Settlement Notice and Claim Form). Each of the Settlement Plaintiff who returns a claim form will be mailed two settlement checks. *Id.* at ¶ 7. One Settlement Check will represent the 50% apportionment of alleged back wages; the other will represent the 50% apportionment of non-wage compensation. *Id.* Fifty percent of the gross amount listed for each Settlement Plaintiff (*See* Ex. 1-A) will be subject to applicable withholdings and will be reported on a Form W-2. *Id.* at ¶¶ 7, 12. The remaining 50% of the settlement amount shall consist of liquidated damages, for which a Form 1099 will be issued. *Id.*

Within twenty-one (21) calendar days of the Effective Date of the Settlement Agreement, NIS will produce names, contact information, and the last four digits of Social Security numbers for each Putative Settlement Plaintiff. Within 21 days of Plaintiffs Counsel's receipt of this

information, Plaintiffs' Counsel will send, by mail and email, the Settlement Notice. *See* Ex. 1-B. Putative Plaintiffs will have sixty (60) days to return a Settlement Claim Form to receive a share of the Net Settlement Amount. Ex. 1 ¶ 6.

### C.    Released parties and claims.

In return for the settlement checks, Thurlow and the Plaintiffs will release NIS, and other related Released Parties from claims based on the facts alleged in the Lawsuit, or arising from their employment with NIS regarding events that occurred or are alleged to have occurred from the beginning of each Plaintiff's relevant limitations period through Court approval of the Settlement Agreement, including any wage claims under the FLSA. *Id.* at ¶ 4. The following language will appear on each Settlement Check:

> By endorsing and negotiating this check and accepting payment, (a) I fully accept and agree to opt-in to the Settlement in the case titled *Thurlow v. Nat'l Inspection Servs., Inc.*, Case No. 4:24-cv-01135-CCW (W.D. Pa.) (the "Lawsuit"), (b) I may review a copy of the Settlement Agreement and I represent that I have done so to the extent so desired, (c) I agree to be bound by the terms and conditions of the Settlement Agreement entered into and executed by Plaintiff, Brye Thurlow, the collective representative, on my behalf, and (d) I release the Releasees (as defined in the Settlement Agreement) from all wage and hour claims under the Fair Labor Standards Act, the Pennsylvania Minimum Wage Act, the Pennsylvania Wage Payment and Collection Law, and/or any other applicable state or local wage and hour law, rule or regulation brought, or which could have been brought, in the Lawsuit, including my release of claims contained in that Settlement Agreement.

*Id.* at ¶ 7.

Additionally, Thurlow, in his individual capacity and not on behalf of any other Plaintiffs, will agree to a general release, for additional compensation, of all potential claims he may have against the Released Parties which can be legally released, whether known or unknown, that arose prior to the date he executed the Settlement Agreement. *Id.* at ¶ 4.

### D.    Settlement fund distribution.

Upon approval by the Court, and within sixty (60) calendar days from the close of the Settlement Notice Period, NIS will issue Settlement Checks in the amounts described in Exhibit 1-A and send such checks to Plaintiff's Counsel for distribution. Ex. 1 at ¶ 10. In turn, Plaintiff's counsel will mail the individual Plaintiffs a package containing their individual settlement checks and the Settlement Notice within twenty-one (21) calendar days of receipt from NIS. *Id.* at ¶ 14. All Settlement Checks will be valid for 180 days. *Id.*

If any Opt-In Plaintiffs did not endorse, cash, or negotiate their Settlement Check within the 180-day period, Plaintiff's Counsel shall have an additional period of thirty (30) days from the close of the check-cashing deadline within which to ensure such Opt-In Plaintiffs can be contacted, located, and/or otherwise meet their requirement to negotiate their Settlement Check. *Id.* Additionally, if any Opt-In Plaintiffs do not timely endorse, cash, or negotiate their Settlement Check within the final 30-day check cashing period, NIS shall deposit the Settlement Amount for such Plaintiffs into the unclaimed property fund for the state of that individual's last-known residential address. *Id.* If any other Settlement Claimants fail to cash their check within 180 days, their share/funds from the Net Settlement Amount will revert back to NIS. *Id.*

### E.    Attorneys' fees and litigation costs.

In addition to being entitled to reasonable attorneys' fees, the FLSA provides for the reimbursement of costs. *See* 29 U.S.C. § 216(b). Under the Settlement Agreement and as negotiated for, Plaintiffs' Counsel fee shall be up to $212,000.00 (*i.e.*, 40% of the Gross Settlement Amount[1]) plus reimbursement of costs/expenses up to $6,489.73, which represents reasonable

---

[1] The U.S. Court of Appeals for the Third Circuit has noted that fee awards generally range from 19% to 45% of the Settlement fund. *See Brumley v. Camin Cargo Control, Inc.*, No. 08-1798 (JLL),

out-of-pocket costs and expenses incurred in litigating and resolving this matter and the continued

work obtaining the approval of this Settlement Agreement. *See* Ex. 1, at ¶ 3; Hogg Decl. at ¶¶ 60-

63, Exhibit 2.

### 4.    Legal Standard.

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees

that cannot be modified by contract." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir.

2014) (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013)). If employers violate

the FLSA's minimum wage and overtime provisions, codified at 29 U.S.C. §§ 206 and 207,

respectively, employers may be liable to affected employees "in the amount of their unpaid

minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional

equal amount as liquidated damages." *Id.* (citing 29 U.S.C. § 216(b)).

District courts in the Third Circuit have identified two procedures for settling FLSA

claims: (1) the Department of Labor can supervise the payment of unpaid minimum wages or

overtime compensation pursuant to 29 U.S.C. § 216(c); or (2) the district court can approve a

settlement under 29 U.S.C. § 216(b). *See Bredbenner v. Liberty Travel, Inc.*, Nos. 09-905, 09-

1248 and 09-4587, 2011 WL 1344745, at *18 (D.N.J. Apr. 8, 2011) (citing *Lynn's Food Stores, Inc.

v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)); *Brumley*, 2012 WL 1019337, at *1.

As to the requirements for settlement approval, district courts in the Third Circuit have

held that the court must determine that "the compromise reached 'is a fair and reasonable

---

2012 WL 1019337, at *12 (D.N.J. Mar. 26, 2012) (approving fee of one-third of the common fund
and citing *In re Gen. Motors Pick–Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3d
Cir. 1995)).

resolution of a bona fide dispute over FLSA provisions.'" *Brumley*, 2012 WL 1019337, at *2 (quoting *Lynn's Food Stores*, 679 F.2d at 1354); *Bredbenner*, 2011 WL 1344745, at *18.

A proposed settlement resolves a "bona fide dispute" when it "reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute," rather than "a mere waiver of statutory rights brought about by an employer's overreaching." *Singleton v. First Student Mgmt. LLC*, No. 13-1744, 2014 WL 3865853, at *8 (D.N.J. Aug. 6, 2014) (quoting *Lynn's Food Stores*, 679 F.2d at 1354).

5.    **Argument & Authorities.**

    A.    **The Settlement is reasonable, fair, and represents a bona fide dispute over alleged unpaid wages.**

Courts considering whether to approve settlement of an FLSA action use a three-step process. *See DiFlavis v. Choice Hotels Int'l, Inc.*, No. 18-3914, 2020 WL 6728806, at *2 (E.D. Pa. Nov. 16, 2020). First, the Court considers whether "the settlement concerns a 'bona fide dispute.'" *Id.* (quoting *Howard v. Phila. Hous. Auth.*, 197 F. Supp. 3d 773, 777 (E.D. Pa. 2016)). If it does, the Court next considers whether the settlement is "fair and reasonable for the employees." *Id.* (quoting *Howard*, 197 F. Supp. 3d at 777). Last, the Court considers whether the settlement "furthers the FLSA's implementation in the workplace." *Id.* (quoting *Howard*, 197 F. Supp. 3d at 777).

        i.    **There is a bona fide dispute over FLSA claims.**

A dispute is "bona fide" when it "reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute'." *Payton-Fernandez v. Burlington Stores, Inc.*, No. 22-608 (AMD), 2024 WL 5202421, at *4 (D.N.J. Dec. 23, 2024) (quoting *Fritz v. Terminite, Inc.*, No. 19-15749, 2020 WL 5015508, at *2 (D.N.J. Aug. 25, 2020)).

In determining whether there is a bona fide dispute between the employees and the employer, courts consider whether the dispute involves legal or factual issues, "such as FLSA coverage or computation of back wages." *Lynn's Food Stores*, 679 F.2d at 1354; *see also Bettger v. Crossmark, Inc.*, No. 1:13-CV-2030, 2015 WL 279754, at *4 (M.D. Pa. Jan. 22, 2015) ("An agreement resolves a bona fide dispute when there is some doubt as to whether the plaintiff would succeed on the merits at trial."). A bona fide dispute exists when "the dispute … fall[s] within the contours of the FLSA and there [is] evidence of the defendant's intent to reject or actual rejection of th[e] claim when it is presented." *Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 530 (E.D. Pa. 2016).

Here, there is no question the Parties' Agreement is a result of fiercely contested litigation and disputes over whether Plaintiffs are owed unpaid wages under the FLSA. The Parties resolved this lawsuit after extensive informal discovery and investigation, the production of thousands of pages of documents, and extensive analysis of employee pay data and damages calculations. The Parties vehemently contested the claims and defenses: Thurlow claimed NIS deprived the Plaintiffs of overtime compensation via their shift pay rate and per diem pay rate schemes while NIS consistently denied Thurlow's allegations. *See generally See* Doc. 1 at ¶¶ 5-12, Doc. 16, Doc. 19 at ¶ 2. The Parties continuously disputed liability in this case, and only through ongoing arm's-length negotiations through a neutral, wage and hour mediator were they able to reach a settlement.

Because the Parties contest liability and the appropriate amount of overtime owed, if any, there is no question a bona fide dispute exists. *See Lynn's Food Stores*, 679 F.2d at 1354; *Sawyer v. Health Care Sols. at Home, Inc.*, No. 5:16-cv-5674, 2019 WL 1558668, at *3 (E.D. Pa. Apr. 10, 2019). The Parties acknowledge that continued litigation of their claims and defenses pose both costs and risks, which informed, in part, their decision to resolve the bona fide disputes between

them.

ii.    **The Parties' agreement is fair and reasonable.**

In determining whether a settlement is fair and reasonable, courts in the Third Circuit use the factors identified by the Third Circuit in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975) to evaluate whether a Rule 23 class action settlement is fair and reasonable. *See DiFlavis*, 2020 WL 6728806, at *3; *In re Chickie's & Pete's Wage & Hour Litig.*, No. 12-6820, 2014 WL 911718, at *2-3 (E.D. Pa. Mar. 7, 2014); *but see Kraus*, 155 F. Supp. 3d at 523 n.3 (observing that some of the *Girsh* factors do not apply in the context of FLSA settlements and that "though *Girsh* may suggest the type of factors to be considered in assessing a private FLSA settlement, courts need not fall into the alluring trap of mechanically applying *Girsh* simply because it is the court's duty to assess whether the proposed agreement is fair and reasonable.").

The nine factors identified in *Girsh v. Jepson* are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

521 F.2d at 157.

Here, this settlement is not a Rule 23 class action settlement, it is simply a collective action settlement under 29 U.S.C. § 216(b). *See* Exhibit 1. As such, a number of the *Girsh* factors are not relevant here, specifically, factors 2 and 6. All of the applicable factors weigh in favor of approving the settlement as fair and reasonable.

**Factor 1:** Where the complexity, expense, and duration of litigation are significant, the Court should view this *Girsh* factor as favoring approval of the settlement. *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 962 F. Supp. 450, 536 (D.N.J. 1997). Here, this matter represented a putative class action and collective action pursuant to 29 U.S.C. § 216(b) and has been pending for nearly a full year, since August 2024. *See* Doc. 1. The Plaintiffs assert they were subject to a complex scheme of "shift rate pay," whereby they were presumed to work a set number of hours per day but were not paid for all hours actually worked. Plaintiffs also allege Defendant failed to properly calculate their overtime rates of pay in that it failed to incorporate various categories of compensation into their regular rate calculation. *See* Doc. 27 at 6-9. These issues require interpretation of various FLSA regulations and case law, and would be difficult to prove on a collective-wide basis.

If this matter had continued in litigation, the parties would have spent significant additional time and resources completing written discovery, deposing Plaintiffs, Defendant, and other fact witnesses, and engaging in related motion practice. Defendant clearly would have disputed its liability and would have sought to decertify the conditionally-certified collective action.

By reaching a settlement prior to engaging in such time-consuming and costly conduct, the parties "avoid the costs and risks of a lengthy and complex trial." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010). Moreover, the non-prevailing parties might have appealed, further delaying final resolution. Given that continued litigation would be complex, time-consuming, and expensive, the Court should find this *Girsh* factor is met.

**Factor 3:** This factor "considers the degree of case development accomplished by counsel prior to settlement." *Bredbrenner*, 2011 WL 1344745, at *12. It is important that the parties have

an "adequate appreciation of the merits of the case before negotiating and settling a matter." *In re Gen. Motors*, 55 F.3d at 813.

Here, the Parties engaged in extensive motion practice (including an opposed motion for FLSA conditional certification), fact investigation, and informal discovery prior to agreeing to settle the case during mediation. This provided the Parties with ample information about their opponents' claims and defenses in order to evaluate their cases. Moreover, the Parties obtained even more information about their adversary's claims and potential defenses during the multiple-session mediation process, mount challenges to those claims/defenses, and thoroughly discussed the amount of potential damages at issue. Accordingly, the Court should find this factor is met.

**Factors 4 & 5:** The settlement is fair and reasonable in light of the risks to Plaintiffs, which exist in the form of multiple bona fide disputes and defenses upon which Defendant might have prevailed at trial had the litigation continues. *See Sheinberg v. Sorenson*, No. 00-6041, 2016 WL 3381242, at *9 (D.N.J. June 14, 2016). In addition to the staunch defenses NIS would present to the claims, many of the Plaintiffs would be faced substantial hurdles with respect to their respective limitations period and would have needed to prevail on a motion for equitable tolling and/or a finding that Defendant violated the FLSA willfully in order to show their entitlement to damages. Plaintiffs risked not receiving any money for their wage-and-hour claims absent this settlement.

On the other side, Defendant faced the risk that continued litigation would have expanded its potential exposure, in that protracted collective-wide discovery would increase costs and/or the state-law claims would be certified as a class action under Rule 23.

Because damages are contingent upon establishing liability, the same concerns "animate both of these elements." *McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448, 461 (D.N.J. 2008). If

the litigation had continued, there would have been a significant risk that the resources available for the settlement would have been used up in litigation, and a resolution on these terms would not have been possible later. The Court should find the fourth and fifth factors have been met.

**Factor 7:** This factor examines whether a defendant can afford to pay a larger judgment than the settlement amount. *Bredbrenner*, 2011 WL 1344745, at *15. If Plaintiffs had proceeded with litigation and/or were awarded a judgment, there is the potential that Defendant would have depleted its assets defending a complex hybrid class and collective action, which would have made it difficult to collect a judgment. As such, the Court should find that the seventh *Girsh* factor weighs in favor of approval or, at least, is neutral.

**Factors 8 & 9:** The eighth and ninth Girsh factors "ask whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial. In order to assess the reasonableness of a proposed settlement seeking monetary relief, the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement." *Ripley v. Sunoco, Inc.*, 287 F.R.D. 300, 313 (E.D. Pa. 2012) (citing *In re Prudential*, 148 F.3d 283, 322 (3d Cir. 1998)).

Here, Plaintiffs calculated the total value of FLSA damages for all members of the collective, assuming the 3-year statute of limitations to be approximately $1,329,557.72. *See* Hogg Decl. at ¶¶ 27–29. The Parties negotiated a settlement that provides a gross total of $530,000.00 for the settlement fund, amounting to approximately 40% of the best-day-at-trial unpaid wage damages owed. *Id.* Even including potential liquidated damages under 29 U.S.C. § 216(b), the recovery represents approximately 20% of the best-day-at-trial total estimated recovery. *Id.* Courts

in this Circuit have found that settlement amounts between 15 and 20% are within the range of reasonableness, placing this case's recovery well above the typical range for settlement. *Cruz v. JMC Holdings, Ltd.*, No. 16-9321 (KSH) (CLW), 2019 WL 4745284, at *6 (D.N.J. Sept. 30, 2019) (collecting cases). Had the case been pursued through trial and been successful on all claims, the recovery may have been greater than the settlement, however, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Rouse v. Comcast Corp.*, No. 14-1115, 2015 WL 1725721, at *10 (E.D. Pa. Apr. 15, 2015) (quoting *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982)). That's because there's a non-zero chance of no recovery at all.

Even if the "best possible recovery" exceeds the Settlement amount, this award could only be attained by continued litigation and after a favorable result from each of the remaining stages of litigation, including possible dispositive motions, trial, and a possible appeal. As discussed above, there is a substantial risk that NIS will move for decertification should the case move to trial, and courts have found that when "there is a substantial risk that [the Plaintiff] would not have been able to successfully prosecute this collective action through trial. [Then] [g]iven this risk, the recovery that class counsel was able to achieve through settlement means that these factors weigh in favor of finding the Settlement Agreement fair and reasonable." *Johnson v. Free State Mgmt. Grp., LLC*, No. 20-197-KSM, 2021 WL 2711528, at *6 (E.D. Pa. July 1, 2021).

These risks far outweigh the present value of an immediate, and not inconsiderable, cash settlement. The Parties' Agreement will provide fair pecuniary relief to Thurlow and the Plaintiffs in the form of Settlement Checks in exchange for a limited release of their wage-and-hour claims and eliminates the risks both Parties would face if this complex litigation continued to resolution

on the merits. The Parties' Agreement also eliminates the possibility of dismissal, decertification, or loss at trial or summary judgment and brings them value now (as opposed to years from now). The substantial benefit Thurlow and the Plaintiffs will immediately receive is a significant factor weighing in favor of approval. As is the fact that Thurlow, the representative Plaintiff, agrees the terms of the Agreement are fair and reasonable. Plaintiffs' positions strongly support the approval of the Agreement.

**B.    The Settlement furthers the FLSA's implementation.**

As for whether the settlement advances the purposes of the FLSA, courts consider factors such as whether the settlement agreement is narrowly tailored such that it resolves only the employees' wage and hour claims and whether the agreement contains a confidentiality clause that would frustrate the FLSA's "informational objective." *In re Chickie's*, 2014 WL 911718, at *3; *DiFlavis*, 2020 WL 6728806, at *7-8.

The Parties' settlement furthers the purposes of the FLSA because, as proposed herein, it would only require Plaintiffs to release their FLSA claims, as well as any related state wage-and-hour claims that could have been asserted based on the same facts pleaded in the operative Complaint against Defendant during the operative time period. *See* Exhibit 1. Accordingly, the release is appropriately and narrowly tailored. *See DiFlavis*, 2020 WL 6728806, at *6 (collecting cases).

The Court must pay closer attention to any confidentiality provision of the Parties' settlement agreement, because "confidentiality clauses in FLSA settlement agreements frustrate the purpose of the Act by restricting information." *Id.*; *see also In re Chickie's*, 2014 WL 911718, at *3 (collecting cases). Here, the Parties' settlement is not confidential. The fact that the Parties

reached a settlement in this case has already been published on the Court's Docket. *See* Doc. 45. Because Plaintiffs' release of claims are narrowly tailored and the settlement is not confidential, the Court should approve the settlement.

### C.    Plaintiffs' Counsel's fees and costs are reasonable.

Plaintiffs' Counsel here seeks an award of out-of-pocket costs and expenses not to exceed $6,489.73. *See* Hogg Decl. at ¶¶ 60-63. Plaintiffs' Counsel also seeks an award of $212,000 in attorneys' fees (equivalent of 40% of the Gross Settlement Amount). This requested fee total is supported by the substantial work Plaintiffs' Counsel performed in the lawsuit and the substantial risk that Plaintiffs' Counsel took in bringing and prosecuting the lawsuit. Plaintiffs' Counsel took this case on a pure contingency fee basis and agreed to receive nothing in this matter—including waiving recoupment of all costs—if the Plaintiffs did not obtain a recovery in this matter.

Courts in the Third Circuit have approved as reasonable attorneys' fees awards ranging up to 45% of the common settlement fund. *See In re Gen. Motors*, 55 F.3d at 822. Percentage awards vary between 19% and 45% of a common fund, and the Court should reduce the percentage as the total settlement amount increases when the reason for the increase is not because of efforts taken by counsel, but instead simply because the size of the class has increased. *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 736 (3d Cir. 2001); *Bredbenner*, 2011 WL 1344745 at *19; *In re Gen. Motors*, 55 F.3d at 822 (citing *In re SmithKline Beckam Corp. Sec. Litig.*, 751 F. Supp. 525, 533 (E.D. Pa. 1990)). Smaller percentages are reserved for large settlements, typically $100 million or higher, which may involve hundreds of thousands, if not millions, of class members and where class counsel did not incur substantial additional efforts by the inclusion of such persons. *See In re Cendent Corp.*, 243 F.3d at 736.

Here, the settlement (if approved) provides an excellent benefit to the Plaintiffs and Potential Opt-in Plaintiffs, providing them substantial percentage recovery of their alleged unpaid wages. Given the substantial benefit for the participants, Plaintiffs' Counsel's requested fee does not take away from that excellent recovery and is fully justified. *See* Hogg Decl. at ¶¶ 60-63.

Plaintiffs' Counsel's request for 40% of an excellent settlement for three FLSA plaintiffs is consistent with awards approved by courts in the Third Circuit. *See Gasper v. Schulson Collective, LLC*, No. 19-2676, 2020 WL 5878263 (E.D. Pa. Oct. 2, 2020) (finding that a 40% contingency fee in FLSA action "falls within the range of attorneys' fees awarded in similar cases." (citing *Schwartz v. Penn. St. Univ.*, No. 4:15-CV-02176, 2017 WL 1386251, at *5 (M.D. Pa. Apr. 18, 2017)); *Diflavis*, 2020 WL 6728806 (approving 52.5% for individual FLSA settlement where the fee under the percentage-of-recovery method represented approximately 13% of the lodestar calculation); *Mabry v. Hildebrandt*, No. 14-5525, 2015 WL 5025810 (E.D. Pa. Aug. 24, 2015) (approving 40% for private FLSA settlement that included substantial discovery efforts); *Lyons v. Gerhard's Inc.*, No. 14-06693, 2015 WL 4378514, at *5 (E.D. Pa. July 15, 2015) (approving attorneys' fees amounting to 44% of the total settlement amount, despite it being "on the higher side," where counsel engaged in copious discovery efforts).

Here, Plaintiffs' Counsel diligently litigated this matter without any compensation through the life of the case. Plaintiffs' Counsel conducted thorough factual investigation, successfully briefed a motion for FLSA conditional certification, successfully opposed NIS's effort to include a personal jurisdiction defense, and throughout that time continued to pursue amicable resolution of this case through multiple mediation sessions with an experienced, well-respected mediator. Plaintiffs' Counsel's lodestar cross-check demonstrates the reasonableness of the fee requested.

*See* Hogg Decl. at ¶¶ 60-63.[2]

### 6.    Dismissal of the Lawsuit With Prejudice.

In addition to approving the Agreement, Thurlow requests that the Court dismiss this lawsuit with prejudice in accordance with Fed. R. Civ. P. 41(a)(2). Courts have found that "A court should grant a motion for voluntary dismissal unless the defendant will suffer some plain legal prejudice." *Duke v. Harvest Hosps., Inc.*, No. 2:20-CV-00865-CCW, 2021 WL 4245089, at *3 (W.D. Pa. Sept. 17, 2021) (quoting *Zamias v. Fifth Third Bank*, No. 3:17-CV-153, 2018 WL 3079464, at *2 (W.D. Pa. June 21, 2018)). Under the terms of the Settlement Agreement, both Thurlow and NIS have agreed to a dismissal with prejudice upon approval of the Agreement; therefore, the Court should grant this voluntary dismissal as the defendant will not suffer legal prejudice by doing so.

### 7.    Conclusion.

For these reasons, Thurlow respectfully requests that the Court grant Plaintiff's Unopposed Motion to Approve Settlement and to Dismiss Lawsuit with Prejudice.

---

[2] "Courts have generally held that lodestar multipliers between 2 and 4.5 demonstrate a reasonable attorneys' fee." *Jones v. Dominion Res. Servs.*, 601 F. Supp. 2d 756, 766 (S.D. W. Va. 2009); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 n.6, appx. (9th Cir. 2002) (collecting cases and finding the risk multiplier fell between 1.0 and 4.0 in 83% of cases, with a range of 0.6-19.6), and at 1050 n.5 (noting class counsel should not necessarily "receive a lesser fee for settling a case quickly"). In *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, No. 16-cv-03698-NC, 2018 WL 2183253, at *7 (N.D. Cal. May 11, 2018), the court found a multiplier over 4.3 to be reasonable; and in *In re NCAA Athletic Grant-In-Aid Cap Antitrust Litig.*, No. 4:14-md-2541-CW, 2017 WL 6040065, at *6 (N.D. Cal. Dec. 6, 2017), the court found a multiplier of 3.66 to be "well within the range of awards in other cases." Thus, the multiplier requested here, while on the higher end, is still within the range that courts consider reasonable. Plaintiffs' Counsel estimates the lodestar multiplier here will fall within this range by the end of the case. *See* Hogg Decl. at ¶ 60.

Dated: June 27, 2025

Respectfully submitted,

*/s/ William M. Hogg*
Michael A. Josephson (PA Bar No. 308410)
Andrew W. Dunlap (TX SBN 24078444)
William M. Hogg (TX SBN 24087733)
JOSEPHSON DUNLAP LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100; Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com
whogg@mybackwages.com

Richard J. (Rex) Burch (TX SBN 24001807)
BRUCKNER BURCH PLLC
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Tel: (713) 877-8788; Fax: (713) 877-8065
rburch@brucknerburch.com

Joshua P. Geist (PA ID No. 85745)
William F. Goodrich (PA ID No. 30235)
GOODRICH & GEIST P.C.
3634 California Ave.
Pittsburgh, Pennsylvania 15212
Tel: (412) 766-1455; Fax: (412) 766-0300
josh@goodrichandgeist.com
bill@goodrichandgeist.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that I served the foregoing document on all parties and counsel of record via the Court's CM/ECF filing system on June 27, 2025, in accordance with the Federal Rules of Civil Procedure.

*/s/ William M. Hogg*

William M. Hogg

## Certificate of Conference

I certify that I conferred with counsel for Defendant regarding the substance of this Motion and the relief sought herein. Defendant is unopposed to the Motion.

*/s/ William M. Hogg*
William M. Hogg